**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| LEONARD TAYLOR,           )<br>                                            )<br>            Plaintiff,         )<br>                                            )<br>    VS.                              )<br>                                            )<br>RICHARD ADAMS &     )<br>ANN PRECYTHE    ,       )<br>                                            )<br>Defendants.                   ) | Case No. _____ |

# COMPLAINT PURSUANT TO 42 U.S.C. § 1983

1. Plaintiff Leonard Raheem Taylor is a devout Muslim. He is incarcerated at the Eastern Reception, Diagnostic and Correctional Center of the Missouri Department of Corrections ("MDOC") under a sentence of death in the custody of the Defendants.

2. The State of Missouri intends to execute Mr. Taylor tonight, on February 7, 2023, under conditions that violate the First Amendment's Free Exercise Clause and substantially burden the exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq, as well as his due process rights under the Fourteenth Amendment.

3. On January 25, 2023, the prison gave Mr. Taylor a form. The form allowed Mr. Taylor to designate the people who could watch his execution, whether as "witnesses" or "ministerial counselors" (who were all collectively described by MDOC as "witnesses"). Under Missouri law, witnesses are not allowed to be present at a condemned man's side. Mr. Taylor did not, and does not, want any witnesses.

1

4. MDOC did not ask, and has never asked, whether Mr. Taylor wants a spiritual advisor at his side when he is killed. He does, and said as much the first chance he could. Now MDOC will not allow it.

5. Relief is necessary to ensure that Mr. Taylor is executed only in a manner that does not substantially burden the exercise of his religious beliefs and does not violate his rights under the Free Exercise Clause or RLUIPA or his due process rights.

## JURISDICTION

6. This Court has jurisdiction under 42 U.S.C. §§ 2000cc-1, 28 U.S.C. §§ 1343, 1651, 2201, and 2202, and under 42 U.S.C.§ 1983.

## VENUE

7. Venue lies in this Court under 28 U.S.C. § 1391 because Defendants maintain offices in the Eastern District of Missouri. Venue is also proper because the execution will occur in this district.

## PARTIES

8. Plaintiff LEONARD TAYLOR is incarcerated under a sentence of death at the Eastern Reception, Diagnostic and Correctional Center. He is scheduled to be executed on February 7, 2023.

9. Defendant ANNE PRECYTHE is the Director of the Missouri Department of Corrections ("MDOC"). She is responsible for the operations of MDOC, including adopting, approving and implementing and/or modifying the policies, practices and customs applicable to prisons that MDOC operates throughout the State of Missouri, including during executions. Upon information and belief, Director Precythe is the final policymaker for MDOC. She is sued in her official capacity.

10. Defendant RICHARD ADAMS is the Warden of the Eastern Reception, Diagnostic and Correctional Center, where the State of Missouri carries out executions. He is being sued in his official capacity. Because Mr. Taylor is the warden of the Eastern Reception, Diagnostic and Correctional Center, he is responsible for supervising the scheduled execution in this case.

## PROCEDURAL HISTORY

11. Plaintiff Leonard Taylor was tried and convicted of four counts of first-degree murder and four counts of armed criminal action in the Circuit Court of St. Louis County, Missouri, on February 28, 2008. *See State v. Taylor*, 2104R05338-01. The Missouri Supreme Court affirmed the conviction and sentence on appeal in *State v. Taylor,* 298 S.W.3d 482 (Mo. banc 2009).

12. Mr. Taylor's subsequently filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after a limited evidentiary hearing. On October 30, 2012, the Missouri Supreme Court affirmed the post-conviction court's denial of relief. *See Taylor v. State,* 382 S.W.3d 78 (Mo. banc 2012). The United States Supreme Court subsequently denied certiorari in *Taylor v. Missouri,* 569 U.S. 1032 (2012).

13. On December 3, 2013, Mr. Taylor filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Missouri. On March 31, 2019, the federal district court relief but issued Mr. Taylor a certificate of appealability on Mr. Taylor's claim that he was denied effective assistance of counsel when trial counsel failed to make a closing argument during the penalty phase of the trial. *Taylor v. Steele*, 372 F. Supp. 3d 800 (E.D. Mo. 2019).

14. Mr. Taylor appealed the ineffective assistance of counsel claim to the Eight Circuit. After briefing and argument, the Eighth Circuit issued an opinion on July 26, 2021, affirming the district court's denial of his habeas corpus petition. *Taylor v. Steele*, 6 F.4th 796 (8th Cir. 2021).

The Supreme Court subsequently denied Mr. Taylor's petition for a writ of certiorari on May 31, 2022. *Taylor v. Blair*, 142 S. Ct. 2757 (2022).

15. On October 18, 2022, upon application of the attorney general, the Missouri Supreme Court set petitioner's execution for February 7, 2023, at 6:00 p.m.

16. On February 2, 2023, Mr. Taylor filed a petition for a writ of habeas corpus pursuant to Missouri Supreme Court Rule 91. The Missouri Supreme Court denied the petition on February 6, 2023.

## ALLEGATIONS OF FACT

17. Pursuant to Section 546.740 RSMo., allows an incarcerated offender set for execution "to have any person, other than another incarcerated offender, not to exceed five, to be present at the execution. Also, you are allowed to have present two ministerial counselors."

18. On February 6, 2023, MDOC refused Mr. Taylor's request that his Muslim spiritual advisor accompany him in the chamber during the scheduled execution, in violation of Section 546.740, his First Amendment religious rights, rights to RLUIPA, and due process rights.

19. Individuals previously executed by the State of Missouri who requested to have their Christian spiritual advisor accompany them into the chamber during the scheduled execution were granted their requests.

20. There is no known or published process for an individual scheduled to be executed to request the presence of their spiritual advisor in the execution chamber.

21. The MDOC "Offender Witness Request" form only permits an offender to request the general presence of witnesses to the execution.

22. Witnesses are not permitted to be present at the condemned man's side in the execution chamber.

4

23. The "Offender Witness Request" form does not provide for a spiritual advisor who may be present within the chamber itself, and does not differentiate between the respective locations of "witnesses" and "ministerial counselors." Ex. A.

24. This form does not indicate that a "ministerial counselor," unlike a "witness," can be at Petitioner's side in the execution chamber.

25. In fact, there is no reference to the execution chamber on the "Offender Witness Request" form.

26. The "Offender Witness Request" form does not inform condemned individuals that they have a right to have a spiritual advisor present and at their side in the chamber during the execution.

27. The "Offender Witness Request" form includes a provision to waive the presence of witnesses to the execution. It does not include a waiver for the presence of a spiritual advisor in the execution chamber.

28. Upon information and belief, Petitioner Taylor was never informed by anyone (or any form) within MDOC that he had the right to have a spiritual advisor with him in the chamber for his execution.

29. 546.740 RSMo. does not state a deadline for an incarcerated individual to request a witness. It does not state a deadline for an incarcerated individual to request a spiritual advisor.

30. This fact is further supported by Defendant Warden Adam's subsequent email to counsel denying presence in the chamber on February 6, 2023, in which Defendant Adam references a Jan 30th email to Mr. Taylor's counsel related to the presence of a spiritual advisor in the chamber and Mr. Taylor's desires. The January 30th email came five days after Mr. Taylor

5

signed the waiver of witnesses, indicating Defendant Adam's understanding that the witness form did not relate to a spiritual advisor's presence in the chamber. Ex. B.

*Factual Background Regarding Raheem Taylor's Decision Regarding Exercising His Right to have a Spiritual Advisor in the Execution Chamber*

31. The following is a summary of the facts that preceded Defendants' denial of Mr. Taylor's rights.

32. On January 25, 2023, Mr. Taylor was presented with a form by his Caseworker Ms. Geddinger. Ms. Geddinger spent approximately "thirty seconds" explaining the form to him. In her explanation, she told Mr. Taylor that this form was asking whether he wanted any of his family to be present to witness his execution.

33. Mr. Taylor has always maintained that he does not want any of his family to have to witness his execution. So his decision on the caseworker's question, as he understood it based on her explanation, was an immediate and clear no.

34. Neither the caseworker nor any MDOC employee informed this that this form includes non-family witnesses, or informed him of his right to have a spiritual advisor for his execution, either as a witness or in the chamber, or both. Mr. Taylor got a pen and signed the waiver form, based upon the quick explanation he was provided.

35. His understanding was that he was only waiving his right to have family witnesses present for his execution.

36. On February 1, based on information and belief, Mr. Taylor wrote a note to the Potosi chaplain designating Anthony Shahid as his spiritual advisor. Based on information and belief, MDOC staff delivered that note to the chaplain on Thursday, February 2.

37. Based on information and belief, Mr. Taylor also designated Mr. Shahid as the person responsible for the handling of his body after execution. Thus, Mr. Shahid is on at least one

MDOC form signed by Mr. Taylor. Mr. Taylor chose his Muslim spiritual advisor Mr. Shahid to be responsible for his body and funeral arrangements because the Muslim faith has certain specific requirements for how the body must be treated and buried.

38. On February 4, 2023, attorney Megan Crane emailed Warden Adams and Bradley Lott to report that Mr. Taylor would like to have his spiritual advisor, Anthony Shahid, in the chamber for his execution. Ex. C.

39. On February 6, 2023, Bradley Lott responded by email confirming that Mr. Shahid had been cleared and was approved to visit, but denying Mr. Taylor's request to have Mr. Shahid in the chamber for the execution, or even present as a witness.

40. Attorney Crane responded to Defendant Lott on February 6, 2023, reiterating Mr. Taylor's request to have his spiritual advisor in the chamber.

41. At 5:17 on February 6, 2023, Assistant Attorney General Andrew Crane sent a letter from Warden Adams denying Mr. Taylor's request to have his spiritual advisor present in the execution chamber for "institutional security reasons related to changing the protocol at this late hour." Ex. B.

42. In the same letter, Warden Adams additionally denied Mr. Taylor's request to have attorney witnesses present for his execution for "institutional security reasons related to changing the protocol at this late hour."

43. Attorney Crane responded on February 6, 2023, asking for additional information regarding the "institutional security concerns" for an individual who had been cleared by the prison and had been visiting Mr. Taylor and was allowed to visit on the day of execution.

44. AG Crane responded on February 7 at 9:06 a.m. with information and confirming the denial of Mr. Taylor's requests.

*Factual Background Regarding Previously Executed Individuals' Exercise of Their Right to Have a Christian Spiritual Advisor in the Execution Chamber*

45. On November 29, 2022, Kevin Johnson had a Christian spiritual advisor present with him in the chamber for his execution.

46. On January 3, 2023, Amber McLaughlin also had a Christian spiritual advisor, present with her in the chamber for her execution.

## CLAIMS FOR RELIEF

**I.   THE MDOC'S ARBITRARY, UNCLEAR, AND UNPUBLISHED POLICY REGARDING THE PROCESS TO REQUEST THE PRESENCE OF A SPIRITUAL ADVISOR THAT RESULTED IN THE PROHIBITION OF THE PRESENCE OF SPIRITUAL ADVISOR OF MUSLIM FAITH, BUT PERMITTED THE PRESENCE OF CHRISTIAN SPIRITUAL ADVISORS IN THE EXECUTION CHAMBER VIOLATES THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ("RLUIPA").**

47.   Mr. Taylor re-alleges and incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

48.   As laid out above, the MDOC's unstated, unclear, and arbitrary policy, which resulted in the refusal to admit his spiritual advisor of the Muslim faith, but permitted the two Christian spiritual advisors to be present for the executions of Amber McLaughlin and Kevin Johnson, violates Mr. Taylor's First Amendment rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

49.   Congress enacted RLUIPA "to provide very broad protection for religious liberty"— even greater protection than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015). RLUIPA provides that the government shall not "impose a substantial burden" on an inmate's "religious exercise," unless the government shows that imposing such a burden can withstand strict scrutiny, meaning the policy "(1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1 (a).

50. Under RLUIPA, "religious exercise" is defined broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A government or state entity may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution even if the burden results from a rule of general applicability," unless the government demonstrates that imposition of the burden is both in furtherance of a compelling governmental interest and is also the least restrictive means of furthering that interest. 42 U.S. C. § 2000cc-1 (2000).

51. Here, the MDOC's refusal to approve Mr. Shahid's presence in the execution chamber constitutes a substantial burden on Mr. Taylor's religious exercise and cannot pass muster under RLUIPA. The MDOC cannot demonstrate that this burden is in furtherance of a compelling government interest, particularly as it previously permitted the presence of two Christian spiritual advisors in the executions of Amber McLaughlin and Kevin Johnson.

**II. THE MDOC'S ARBITRARY, UNCLEAR, AND UNPUBLISHED POLICY REGARDING THE PROCESS TO REQUEST THE PRESENCE OF A SPIRITUAL ADVISOR THAT RESULTED IN THE PROHIBITION OF THE PRESENCE OF SPIRITUAL ADVISOR OF MUSLIM FAITH, BUT PERMITTED THE PRESENCE OF CHRISTIAN SPIRITUAL ADVISORS IN THE EXECUTION CHAMBER VIOLATES THE FREE EXERCISE CLAUSE BECAUSE IT INHIBITS THE FREE EXERCISE OF MR. TAYLOR'S MUSLIM FAITH.**

52. Mr. Taylor re-alleges and incorporates by reference the allegations contained in the previous paragraphs of this complaint.

53. The First Amendment commands that "Congress shall make no law…prohibiting the free exercise of" religion. U.S.Const. amend. I. The Free Exercise Clause applies to state

government actions. *See Cantwell v. Connecticut*, 319 U.S. 296, 303 (1940) (holding that the protections of the Free Exercise Clause are incorporated by the Fourteenth Amendment against the States).

54. The MDOC's arbitrary prohibition of the presence of Mr. Shahid will inhibit the exercise of Mr. Taylor's Muslim faith and will prevent the performance of essential religious customs in the critical moments as Mr. Taylor transitions into the afterlife. When considering laws or policies that inhibit the free exercise of religion, reviewing courts must first determine whether the law is neutral and generally applicable. *Church of the Lukumi Babulu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). A law or policy that is not both neutral and of general applicability "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id*.

55. The MDOC's policy—to the extent there can be said there is one—is not neutral because it evinces a hostility toward religion by denying religious exercise at the precise moment it is needed most: when someone is transitioning from this life to the next. The policy does this on its face and clearly targets those prisoners who believe they need a spiritual advisor with them in the execution chamber—indeed, there is no form or published process about how to request a spiritual advisor's presence in the execution chamber. The MDOC's arbitrary policy of approval thus cannot survive strict scrutiny.

### III. THE MDOC'S ARBITRARY, UNCLEAR, AND UNPUBLISHED POLICY REGARDING THE PROCESS TO REQUEST THE PRESENCE OF A SPIRITUAL ADVISOR THAT RESULTED IN THE PROHIBITION OF THE PRESENCE OF SPIRITUAL ADVISOR OF MUSLIM FAITH, VIOLATES MR. TAYOR'S RIGHTS TO DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT.

56. Mr. Taylor re-alleges and incorporates by reference the allegations contained in the previous paragraphs of this complaint.

10

57.    When a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution-and, in particular, in accord with the Due Process Clause. *Evitts v. Lucey,* 469 U.S. 387, 401, 105 S. Ct. 830, 839, 83 L. Ed. 2d 821 (1985).

58.    Given the right to have a spiritual advisor in the execution chamber, Defendants are required to provide a process that satisfies due process.

59.    MDOC's arbitrary, unclear, and unpublished "policy" regarding the process to request the presence of a spiritual advisor violates due process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court provide relief as follows:

1.    A declaratory judgment that the MDOC's arbitrary process resulting in the prohibition of the presence of his spiritual advisor of Muslim faith violates Mr. Taylor's rights under the First Amendment's Free Exercise Clause.

2.    A declaratory judgment that the MDOC's arbitrary process resulting in the prohibition of the presence of his spiritual advisor of Muslim faith violates RLUIPA.

3.    A declaratory judgment that the MDOC's arbitrary process violates Due Process.

4.    A preliminary and permanent injunction prohibiting Defendants from executing Mr. Taylor until they (1) implement and enact a clear and equitable process regarding a request for a spiritual advisor's presence during the lethal injection process and (2) allow his spiritual advisor to be present with him in the chamber.

DATED: February 7, 2023

Respectfully submitted,

*/s/ Kent E. Gipson*
KENT E. GIPSON, #34524
Law Office of Kent Gipson, LLC
121 East Gregory Boulevard
Kansas City, Missouri 64114
816-363-4400 • Fax 816-363-4300
kent.gipson@kentgipsonlaw.com

*/s/ Kevin L. Schriener*
KEVIN L. SCHRIENER, #35490
Law & Schriener, L.L.C.
141 North Meramec Ave., Suite 314
Clayton, Missouri 63105
(314) 721-7095 • Fax: (314) 863-7096
kschriener@SchrienerLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2023, the foregoing was sent to the Attorney General's Office via email to Mike.Spillane@ago.mo.gov.

*/s/ Kent E. Gipson*

Counsel for Plaintiff